Scott A. Hagen (4840)
RAY QUINNEY AND NEBEKER P.C.
36 South State Street, Suite 1400
Salt Lake City, Utah 84111
Telephone: (801) 532-1500
shagen@rqn.com

*Attorneys for Plaintiff Jocimar Martins de Souza*

IN THE UNITED STATES DISTRICT COURT IN AND FOR

THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JOCIMAR MARTINS DE SOUZA, JR., an individual,<br><br>Plaintiff,<br><br>v.<br><br>CHARLY'S SHOP, LLC, a Utah limited liability company, and CARLOS VARGAS, an individual.<br><br>Defendants. | **COMPLAINT**<br><br><br>Case No. _____<br><br>Judge : _____ |

Plaintiff, Jocimar Martins De Souza, Jr. ("Martins"), by and through his counsel, Scott A.

Hagen of Ray Quinney & Nebeker, P.C. asserts the following complaint against Defendants

Charly's Shop ("Charly's") and Carlos Vargas ("Vargas") (collectively "Defendants").

**PARTIES**

1.       Martins is a citizen of Brazil and lives in Salt Lake County, Utah.

2.       Defendant Charly's is a Utah limited liability company headquartered in Salt

Lake County, Utah.

3.       On information and belief, Defendant Carlos Vargas is an individual, over the age

of 21 and a resident of Salt Lake County, Utah and owner of Defendant Charly's.

## JURISDICTION AND VENUE

4.      This Court has original jurisdiction over Martins' Fair Labor Standards Act ("FLSA") claims pursuant to the provisions of 28 U.S.C. § 1331 (federal question) and 29 U.S.C. § 216(b) (fair Labor Standards Act).  The Court may exercise supplemental jurisdiction over the claims based on state law under 28 U.S.C. § 1367(a).

5.      Venue is properly laid in this Court pursuant to the provisions of 28 U.S.C. 1391(b).

## GENERAL ALLEGATION

6.      Martins is an experienced diesel mechanic.

7.      Vargas owns and operates Charly's, a mechanical workshop that specializes in diesel mechanics.

8.      In June 2019, Martins learned from a friend that Charly's was looking for a diesel mechanic and he thought Martins would be a great fit.

9.      Vargas interviewed Martins on June 18, 2019 and immediately offered him the job at Charly's as a diesel mechanic.

10.     Vargas needed an experienced diesel mechanic to work at Charly's and he told Martins that he thought Martins would be perfect for the job.

11.     Vargas promised to pay Martins $27.50 per hour.

12.     Vargas also promised, as part of the agreement, that he would apply for Martins to receive an EB-3 work visa without any charge to Martins.

13.     In exchange, Martins would work for Charly's at least 40 hours per week.

14.     When Martins inquired about a written contract to solidify the agreement, Vargas responded that "written contracts are not used in America, and everyone is just paid hourly."

15.     Martins worked for Defendants from June 20, 2019 to January 17, 2020 under the supervision of Vargas.  Vargas paid him on a weekly basis.

16.     After his first week, Martins worked over 40 hours every week during his employment with Charly's.

17.     During some weeks, Martins worked over 70 hours.

18.     Often Martins worked until 9:00 or 10:00 at night, and both opened and closed the shop.

19.     Martins worked exclusively for Charly's Shop and only for Charly's customers.

20.     Defendants would not let Martins work for himself (as an independent contractor) or for any other employer while working for Defendants.  Martins never had his own customers.

21.     Although Martins had a few personal tools, as is common for most mechanics, most of the tools he used while at work belonged to Charly's.

22.     Further, Martins had no other gainful employment while employed by Charly's, and all the work he performed was performed at Charly's.

23.     In July 2019, Martins asked Vargas for information on his work visa.

24.     Vargas told Martins that he was ready to begin the application process and that he would hire a lawyer to formalize the application.

25.     On August 8, 2019, which was a regular payday, Martins did not receive a payment for the work he did that week.

26.     When Martins inquired with Vargas about the lack of a paycheck for that day, Vargas told Martins that moving forward, he was not going to pay Martins his salary for the first week of each month so that he could pay for the attorney fees and application fees associated with Martins' visa.

27.     Vargas refused to pay Martins for the work he did during the first week of each month from July 2019 to December 2019.  Therefore, he was not paid anything at all for five weeks of work.

28.     After approximately July 2019, Vargas informed Martins that he was going to pay all of his wages in cash per the attorney's recommendation.

29.     The wages Vargas withheld from Martins' pay to allegedly pay for the attorney and work visa amounted to $10,491.25 total over the course of Martins' employment with Defendants.

30.     Defendants never paid Martins the full amount due in any paycheck.

31.     Defendants paid Martins with cash but on occasion with a check.

32.     Defendants never provided Martins with a proof of payment when they paid with cash.

33.     Because of the inconsistency and lack of record, Martins kept a daily record of the hours he worked, and any unpaid wages.

34.     Martins' records show that he worked a total of 1,830 hours during his employment with Defendants.  601 of those hours were worked as overtime, that is, hours over 40 during a work week.

35.    However, despite the fact that he was working well over 40 hours per week every week, Martin's records show that Defendants grossly underpaid him.

36.    For his first week of work, Vargas paid Martins $500 for working 29 hours.

37.    During another week, Defendants only paid Martins $1,150, despite the fact that Martins actually worked 58 hours.

38.    On seven other weeks, Vargas only paid him $1,100, despite the fact that Martins worked overtime in every one of those weeks.

39.    On seventeen other weeks, Vargas only paid him $1,000.

40.    Finally, there were five weeks (the five weeks where compensation was withheld to pay for an attorney and other costs) where Vargas did not pay Martins anything at all.

41.    Every weekly paycheck Vargas gave to Martin was incorrect.  Defendants never paid Martins for the full amount of hours that he worked.

42.    In December, before Martins' tourist visa expired, Martins' wife inquired with the lawyer for Charly's and the U.S. Department of Labor about her husband's work visa.  She discovered that Defendants had never filed an application for Martins' EB-3 work visa, despite their promise to do so.

43.    Immediately after learning that Defendants had not filed his work visa application, Martins asked Vargas to explain what happened.

44.    Vargas replied that he instructed the lawyer to file the application but the lawyer simply failed to do it.

45.    When Martins asked Vargas to pay him the wages he withheld to file his visa application, Vargas replied that he would only give him the unpaid wages if the attorney returned

the money.  Shortly after, on January 17, 2020, Vargas paid Martins $1,100 and terminated his employment.

46.     Vargas told Martins he was terminating his employment because Charly's was going out of business and he was selling and closing the shop.

47.     Vargas also refused to pay Martins his unpaid wages because the attorney allegedly refused to give the money back and according to Vargas, Martins' legal status prohibited him from earning wages or filling out the forms necessary to receive pay.

48.     On January 18, Martins went back to Charly's to retrieve his personal tools and found that the business was still open.

49.     Vargas had lied to Martins about closing the shop and the reason why he fired him.

50.     Martins again asked Vargas to repay him for the overtime work and the wages he had supposedly withheld to file the visa application, but Defendants refused this request, and refused to communicate with Martins after they terminated him.

51.     On February 14, 2020, Martins made a formal written demand for the wages that he was owed, but Defendants refused to pay.

## FIRST CAUSE OF ACTION
(Breach of Contract for Failure to Pay Agreed Upon Hourly Wage)

52.     Martins incorporates the allegations contained in the foregoing paragraphs.

53.     Martins and Defendants entered into an oral employment agreement whereby Defendants agreed to pay Martins a wage of $27.50 per hour in exchange for Martins working at least 40 hours per week for Charly's.

54.     Martins satisfied his side of the bargain by working at least 40 hours each week.

55.     Defendants breached the agreement by repeatedly paying Martins less than the agreed upon wage.  For thirteen weeks, Defendants failed to pay Martins the agreed upon wage of $27.50 per hour.

56.     As a result of Vargas's breach, Martins suffered damages, in the form of lost wages that are equal to the difference between the agreed $27.50 per hour wage and what he was actually paid.

57.     Defendants are liable for the damages, plus costs and attorney fees under Utah Code. Ann. § 34-27-1 (2019).

### SECOND CAUSE OF ACTION
(Withholding and Diverting Employee's Funds in Violation of Utah Code Ann. § 34-28-3(6)

58.     Martins incorporates the allegations contained in the foregoing paragraphs.

59.     Under Utah law, Defendants were prohibited from withholding from Martins' paychecks an amount claimed was used to pay the attorney fees and other costs of his work visa.

60.     Defendants willfully and unlawfully withheld Martins' wages on the first week of the month for the months of August through December of 2019, in violation of Utah Code Ann. § 34-28-3(6).

61.     In withholding Martins' wages, Defendants acted knowingly and willfully and/or with reckless disregard as to whether their conduct was prohibited by Utah Code Ann. § 34-28-3(6).

62.     Defendants are liable to Martins under § 34-28-9.5 for the the amount of wages withheld for the five months in question, and an amount equal to 2.5% of those unpaid wages for the duration of the lesser of the "period beginning the day on which the court issues a final order

and ending the day on which the employer pays the unpaid wages owed to the employee" or "20 days after the day on which the court issues a final order."

## THIRD CAUSE OF ACTION
(Failure to Pay Unpaid Wages Upon Separation From Employer's Payroll
Under Utah Code Ann. § 34-28-5(1)(a)

63.     Martins incorporates the allegations contained in the foregoing paragraphs.

64.     Upon separating Martins from its payroll on January 17, 2020, Defendants were required to pay him all wages due within 24 hours of the separation pursuant to Utah Code Ann. 34-28-5(1)(a).

65.     Defendants failed to pay Martins the wages they owed him within 24 hours of separating him from the payroll on January 17, 2020.

66.     Defendants are liable to Martins under § 34-28-9.5 for all ordinary and overtime wages they withheld from Martins plus an amount equal to 2.5% of those unpaid wages for the duration of the lesser of the "period beginning the day on which the court issues a final order and ending the day on which the employer pays the unpaid wages owed to the employee" or "20 days after the day on which the court issues a final order."

## FOURTH CAUSE OF ACTION
(Failure to Pay Minimum Wage Under the FLSA)

67.     Martins incorporates the allegations contained in the foregoing paragraphs.

68.     At all relevant times, Defendants had the statutory obligation to pay Martins the federal minimum wage for all hours worked, pursuant to 29 U.S.C. § 206.

69.     Defendants failed and willfully refused to pay Martins' minimum wage as required by the FLSA, 29 U.S.C. § 206 on every first week of the month for the months of August through December of 2019, for a total of five weeks.

70.     In failing to pay minimum wage to Martins, Defendants acted knowingly and willfully and/or showed a reckless disregard as to whether their conduct was prohibited by the FLSA.

71.     Defendants are liable to Martins under the FLSA for unpaid minimum wages for five weeks of work.  Defendants are also liable to Martins for liquidated damages in an additional amount equal to the unpaid minimum wages.

## FIFTH CAUSE OF ACTION
### (Failure to Pay Overtime in Violation of the FLSA)

72.     Martins incorporates the allegations contained in the foregoing paragraphs.

73.     At all relevant times, Defendants had the statutory obligation to pay Martins overtime pay at the rate of 1.5 times his regular hourly rate of pay for all hours Martins worked over 40 hours per week, pursuant to 29 U.S.C. § 207.

74.     Defendants failed and willfully refused to pay Martins the required overtime pay.

75.     In failing to pay Martins' overtime pay, Defendants acted knowingly and willfully and/or showed a reckless disregard as to whether their conduct was prohibited by the FLSA.

76.     Defendants owe Martins the unpaid overtime premium as well as liquidated damages in an amount equal to the unpaid overtime pay.

## SIXTH CAUSE OF ACTION
### (Retaliation in Violation of FLSA 29 U.S.C. § 215(a)(3))

77.     Martins incorporates the allegations contained in the foregoing paragraphs.

78.     Defendants discharged Martins on January 17, 2020 in retaliation for his complaints of FLSA violations and demands for minimum wage and overtime pay pursuant to the FLSA, in violation of 29 U.S.C. § 215(a)(3).

## **REQUEST FOR RELIEF**

Wherefore, Martins prays for judgment against Defendants and each of them on all claims and causes of action as follows:

a)      For back wages in the amount of unpaid wages as agreed upon in the oral agreement as a result of Vargas's breach of contract, to be determined at trial but no less than $32,280;

b)      For the five weeks of unpaid wages that Vargas unlawfully withheld, to be determined at trial but no less than $10,491.25, pursuant to Utah Code Ann. § 34-28-9.5 and Utah Code Ann. § 34-28-3(6);

c)      For all wages Defendants owed to Martins for failing to pay him the wages due within 24 hours of separation from its payroll in an amount to be determined at trial, but no less than $32,280, pursuant to Utah Code Ann. § 34-28-5(1)(a);

d)      For 2.5% of awarded damages for the duration of the lesser of the "period beginning the day on which the court issues a final order and ending the day on which the employer pays the unpaid wages owed to the employee" or "20 days after the day on which the court issues a final order" pursuant to Utah Code Ann. § 34-28-9.5(3);

e)      For back wages in the amount of unpaid minimum wages as required by the FLSA in an amount to be determined at trial, but no less than $2,327.25;

f)      For unpaid overtime compensation as required by the FLSA in an amount to be determined at trial but no less than $24,791.25;

g)      For an award of liquidated damages as allowed by the FLSA in an amount equal to the unpaid minimum wage and unpaid overtime compensation awards to be determined at trail but no less than $27,118.50;

h)      For all damages permitted under the FLSA for violation of the FLSA's anti-retaliation provision contained in 29 U.S.C. § 215(a)(3), including, without limitations, lost wages, an additional amount equal to the lost wages, compensatory and punitive damages, in the amount to be established at trial;

i)      Pre- and post-judgment interest on all amounts owing;

j)      Martins' reasonable costs and attorney fees pursuant to 29 U.S.C. § 216(b), and Utah Code Ann. § 34-27-1; and

k)      For such other and further relief the Court deems just, equitable and proper.

DATED this 12th day of June, 2020.

RAY QUINNEY & NEBEKER P.C.


/s/  Scott A. Hagen
Scott A. Hagen

*Attorneys for Plaintiff Jocimar Martins de Souza*

1531682

11