IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| JOCIMAR MARTINS DE SOUZA, JR., an individual,<br><br>Plaintiff,<br><br>v.<br><br>CHARLY'S SHOP, LLC, a Utah limited liability company, and CARLOS VARGAS, an individual,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO SET ASIDE DEFAULT JUDGMENT<br><br>Case Number 2:20-CV-364-TS-JCB<br><br>District Judge Ted Stewart |

Defendants Charly's Shop, LLC and Carlos Vargas move to set aside the court's default judgment of December 6, 2021.[1] For the reasons below and after considering all relevant factors, the court will grant the motion and refer the case to a magistrate judge for a settlement conference.

I. BACKGROUND

On June 12, 2020, Plaintiff Jocimar Martins De Souza, Jr. ("Plaintiff") sued Charly's Shop, LLC and its owner, Carlos Vargas (collectively "Defendants") for breach of contract and violations of state and federal employment laws.[2] Defendants answered on August 27, 2020.[3] During discovery, the parties stipulated to extensions of various deadlines,[4] allegedly due to

---

[1] Docket No. 58.

[2] Compl., Docket No. 2.

[3] Docket No. 9.

[4] Docket Nos. 18, 23, 25.

1

communication problems between Vargas and his counsel caused by Vargas' poor health.[5] On July 19, 2021, Plaintiff moved for default against Defendants on the basis that Defendants failed to produce pretrial disclosures by the deadline in the court's amended scheduling order.[6] The court ordered Defendants to respond to the motion by July 21, 2021.[7] On July 22, 2021, counsel for Defendants informed the court that Vargas had been in Mexico receiving treatment for serious medical problems, making communication difficult despite counsel's diligent efforts.[8] After several attempts, Defendants' counsel finally spoke with Vargas, who expressed a desire to proceed to trial.[9] Despite Defendants' overdue response, the court denied the motion for default on July 28, 2021.[10] After consulting with counsel at a hearing of October 19, 2021, the court set a final pretrial conference for December 1, 2021 at 9:00 a.m. and scheduled a two-day bench trial to begin on December 15, 2021.[11]

On October 25, 2021, counsel for Defendants requested permission to withdraw.[12] Counsel explained that Vargas had ceased communication and had not paid his legal fees.[13] In accordance with the local civil rules, counsel included the following notices in his motion:

> In accordance with DUCivR 83-1.4(c)(1)(A)(iii) notice is hereby given that if the motion is granted and no Notice of Substitution of Counsel has been filed, the Defendants must file a Notice of Appearance within twenty-one (21) days after entry of the order, unless otherwise ordered by the court.

---

[5] Docket No. 36 at 2.

[6] Docket No. 32.

[7] Docket No. 34.

[8] Docket No. 36 at 2–3.

[9] *Id.* at 2.

[10] Docket No. 38.

[11] Docket No. 44.

[12] Docket No. 46.

[13] *Id.* at 1–2.

> In accordance with DUCivR 83-1.4(c)(1)(A)(iv) notice is hereby given that no corporation, association, partnership, limited liability company, or other artificial entity may appear pro se, but must be represented by an attorney who is admitted to practice in this court.
>
> In accordance with DUCivR 83-1.4(c)(1)(A)(v) Defendants' Counsel certifies that this Motion to Withdraw as Counsel for Defendants was sent to the Defendants and all parties.[14]

Magistrate Judge Jared C. Bennett granted counsel's motion to withdraw on October 26, 2021.[15]

On November 16, 2021, Vargas filed several documents with the court.[16] Vargas indicated that he had been hospitalized and had not received notice of counsel's withdrawal until November 4, 2021.[17] Liberally construed, Vargas' filings requested that the court appoint legal counsel for Defendants or allow Vargas to proceed on behalf of himself and Charly's Shop.[18]

On November 17, 2021, the court entered an order explaining that a court may, in its discretion, request an attorney to represent a person unable to afford counsel.[19] The court continued:

> The court has serious concerns about Vargas' ability to defend himself. Vargas does not appear to speak English fluently and has severe, ongoing health concerns, both of which would impact his ability to competently represent himself. However, Vargas has submitted no financial information showing that he is indigent or otherwise unable to pay for an attorney. If Vargas wishes the court to further consider the request to appoint an attorney, he must submit within seven (7) days of this Order a completed Motion to Proceed *In Forma Pauperis* (Nonincarcerated Party), available from the Clerk's office, so the court may evaluate his financial circumstances. Alternatively, if Vargas wishes to retain his own counsel he must do so before the pretrial conference on December 1, 2021.
>
> Vargas may not represent Charly's Shop, which must be represented by an attorney and is not eligible for *in forma pauperis* status. Accordingly, Charly's

---

[14] *Id.* at 2.

[15] Docket No. 47.

[16] Docket No. 48.

[17] Docket No. 48-1 at 1.

[18] Docket No. 48.

[19] Docket No. 50 at 1 (citing 28 U.S.C. § 1915(e)(1)).

      Shop must retain an attorney before the pretrial conference on December 1, 2021.[20]

The court warned that failure to retain counsel before the pretrial conference could result in a default judgment against any unrepresented Defendant.[21] The court included with its order a blank copy of the form "Motion to Proceed In Forma Pauperis (Nonincarcerated Party)."[22] Defendants failed to respond to this order in any way.

      On November 29, 2021, the court issued a Trial Order reminding the parties of the final pretrial conference on December 1, 2021 at 9:00 a.m., stating that "[a]ny party that believes an extension of time is necessary **must** make an appropriate motion to the court."[23] Vargas avers that he did not receive the order until two days after the pretrial conference.[24]

      The court held a final pretrial conference as planned on December 1, 2021.[25] Neither Vargas nor any representative for Defendants appeared.[26] Plaintiff's counsel indicated that she had recently communicated with Vargas about the conference.[27] The court stated that it would enter an order of default based on Defendants' non-appearance and lack of response to the court's prior order and ordered Plaintiff to file a declaration regarding damages.[28]

      On December 6, 2021, the court granted a default judgment pursuant to Federal Rule of Civil Procedure 16(f)(1) and Rule 37(b)(2)(A)(vi).[29] The court found that Plaintiff had been

---

[20] *Id.* at 2.

[21] *Id.* at 3.

[22] Docket No. 50-1.

[23] Docket No. 51 at 1.

[24] Docket No. 58-1 ¶ 56.

[25] Docket No. 52.

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] Docket No. 53.

prejudiced by Defendants' failure to appear and properly participate in the action, Defendants' actions interfered with the judicial process to the point that the case could not proceed, and Defendants failed to heed the court's warnings that default judgment could result. The court carefully refrained from finding willful misconduct, noting Vargas's apparent health challenges and a language barrier. However, the court explained that lesser sanctions would not be effective as Vargas's failure to participate had brought the case to a standstill. Accordingly, the court ordered default judgment entered against Defendants and stated it would enter final judgment by separate order. On December 17, 2021, Plaintiff filed a declaration in support of total damages of $65,713.14, prejudgment interest of $12,595, and attorney's fees of $52,097.[30] However, final judgment has not yet been entered.

On December 20, 2021, new counsel for Defendants filed a motion to set aside the default that included a sworn declaration from Vargas.[31] On January 3, 2022, Plaintiff responded in opposition.[32] Defendants replied on January 18, 2022.[33]

## II.   DISCUSSION

Defendants argue to set aside the default under Rules 55(c) and 60(b). These rules differ in the type of default to which they apply and the extent of the moving party's burden. Rule 55(c) states that to set aside the clerk's entry of default a party must show "good cause," but to set aside a final default judgment the court applies Rule 60(b). Rule 60(b) states that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding" for "excusable neglect" or "any other reason that justifies

---

[30] Docket Nos. 54–55.

[31] Docket No. 58.

[32] Docket No. 59.

[33] Docket No. 60.

relief." Rule 60(b) provides the standard for setting aside a final default judgment ordered as a penalty under Rule 16(f).[34]

In this case, the court did not enter default for failure to prosecute under Rule 55; rather, the court granted a default judgment as a penalty for failure to appear at the pretrial conference under Rule 16(f). However, because the court has not yet determined damages, the judgment is not "final" as necessary to invoke Rule 60(b).[35] Thus, the "good cause" standard likely applies. However, the court need not resolve which rule applies because, after careful consideration of all aspects of the case and recognizing the equities on both sides, the court would set aside the default judgment even under the more demanding "excusable neglect" standard of Rule 60(b).[36]

The Tenth Circuit counsels that "[t]he preferred disposition of any case is upon its merits and not by default judgment," although the court has discretion to weigh this preference against other considerations that counterbalance it.[37] The determination of whether excusable neglect justifies setting aside a judgment "is at bottom an equitable one, taking account of all relevant

---

[34] *See* Steven S. Gensler & Lumen N. Mulligan, 2 Federal Rules of Civil Procedure, Rules and Commentary Rule 55 (2021 update) (distinguishing between default for failure to prosecute under Rule 55 from default judgments entered as penalties, noting that courts should not "expand Rule 55 to reach beyond the initial stages of the lawsuit").

[35] *See Roska ex rel. Roska v. Sneddon*, 437 F.3d 964, 970 (10th Cir. 2006) ("An order that determines liability but leaves damages to be calculated is not final, unless the calculation of damages is merely ministerial. [If] further proceedings are necessary to determine causation and the amount of damages, if any, the district court's order is not final.") (internal quotation marks and citations omitted); *see also Roberson v. Farkas*, No. CV 09-795 JCH/WDS, 2011 WL 13117113, at *3 (D.N.M. Sept. 30, 2011) (unpublished) (collecting cases).

[36] *See Pinson v. Equifax Credit Info. Servs., Inc.*, 316 F. App'x 744, 750 (10th Cir. 2009) ("The good cause required by Fed.R.Civ.P. 55(c) for setting aside entry of default poses a lesser standard for the defaulting party than the excusable neglect which must be shown for relief from judgment under Fed.R.Civ.P. 60(b).") (internal quotation marks and citation omitted).

[37] *Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir. 1970) (citing *Meeker v. Rizley*, 324 F.2d 269 (10th Cir. 1963)).

circumstances surrounding the party's omission."[38] Relevant factors include the danger of prejudice to the opposing party, the length of the delay and its potential impact on judicial proceedings, the reason for the delay including whether it was within the reasonable control of the movant, and whether the movant acted in good faith,[39] as well as whether the moving party's underlying claim or defense is meritorious,[40] whether the failure was "a single unintentional incident" rather than "a pattern of deliberate dilatoriness and delay,"[41] and whether prompt action was taken to remedy the neglect.[42] Willfulness is of particular importance; the Tenth Circuit has indicated that a default judgment is normally inappropriate where a failure to comply with a court order was not willful or otherwise the defendant's fault.[43] A "willful failure" is "any intentional failure as distinguished from involuntary noncompliance."[44]

There are strong arguments on both sides of this motion. Most importantly, however, the court is not wholly convinced that Defendants' actions leading to default were willful. The immediate cause for the default judgment was Vargas's failure to participate in the pretrial conference. As further explained below, Vargas plausibly avers that he believed the court would

---

[38] *Jennings v. Rivers*, 394 F.3d 850, 856 (10th Cir. 2005) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 395 (1993)).

[39] *Id.*

[40] *Id.* at 857 (citing *Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444–45 (10th Cir. 1983)).

[41] *Id.* (citing *Hancock v. City of Okla. City*, 857 F.2d 1394, 1396 (10th Cir. 1988)).

[42] *Id.* (citing *Hancock*, 857 F.2d at 1396).

[43] *M.E.N. Co. v. Control Fluidics, Inc.*, 834 F.2d 869, 872 (10th Cir. 1987) ("Because a default judgment is a harsh sanction, due process requires that "failure" is a sufficient ground only when it is the result of 'wilfullness, bad faith, or [some] fault of petitioner' rather than inability to comply.") (quoting *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 640 (1976)).

[44] *Id.* at 872–73; *see also In re Standard Metals Corp.*, 817 F.2d 625, 629 (10th Cir.) (collecting cases), *on reh'g sub nom. Sheftelman v. Standard Metals Corp.*, 839 F.2d 1383 (10th Cir. 1987); *AAAG-California, LLC v. Kisana*, No. 2:20-CV-00026, 2021 WL 2383002, at *3 (D. Utah June 10, 2021) (finding repeated failures to comply willful where defendant had offered excuses and apologies but not shown inability to comply).

decide the case at trial on December 15, 2021; he did not understand that his presence was required at the pretrial conference or that a default judgment might result if he failed to attend.[45] The fact that Vargas has taken affirmative steps to participate in this litigation supports his statement that his failure to participate appropriately was due to ignorance and inability rather than unwillingness.

Vargas's attorney withdrew approximately six weeks before the pretrial conference. Vargas did not receive notification of the withdrawal until less than a month before the pretrial conference. Because Vargas is a native Spanish speaker with limited English ability,[46] the notice had to be put through Google Translate so he could read it,[47] and it did not inform Vargas that he needed to personally appear at the pretrial conference. Vargas received the court's November 17 order on November 22—eight days before the pretrial conference—and this order did not inform him that he needed to personally appear at the pretrial conference.[48] Plaintiff's counsel spoke with Vargas several times in the days before the pretrial conference, confirmed he knew about it, and made highly commendable efforts to help him fulfil his obligation to contribute to a stipulated pretrial order.[49] However, it is unclear whether these conversations would have remedied Vargas's apparent misunderstanding about his need to be present at the conference—indeed, it was not Plaintiff's counsel's role to inform Vargas he needed to be there. Vargas avers that he reasonably expected help from a lawyer with whom he was meeting the afternoon before the pretrial conference and to whom he had already paid a fee, only to be told that afternoon that

---

[45] Docket No. 58-1 ¶ 54.

[46] *Id.* ¶¶ 20, 23, 25–26.

[47] *Id.* ¶ 43.

[48] *Id.* ¶¶ 47–52.

[49] *Id.* ¶ 51.

the lawyer could not help him after all.[50] As for the court's pretrial order which might have clarified matters, Vargas did not receive it until two days *after* the pretrial conference.[51] For these reasons, the court finds Vargas's alleged misunderstanding regarding the pretrial conference potentially credible.

Defendants have also made affirmative, if unsatisfactory, efforts to participate in this lawsuit. Vargas hired an attorney at the commencement of the lawsuit and when he learned his attorney had withdrawn he promptly looked for another lawyer.[52] Between withdrawal of his prior counsel and the pretrial conference Vargas spoke to at least ten attorneys and a bankruptcy attorney.[53] When he was unable to find another lawyer who would take his case he came to the court and filed papers that attempted to explain the problem and seek help.[54] Those papers, which the court had to construe liberally because they were largely incoherent, confirmed that Vargas had limited English ability and understanding of the legal process. Vargas finally found an attorney on December 8, 2021, who promptly filed a motion to set aside the default.[55] All this suggests a good-faith effort by Defendants.

Also, Vargas appears to have had severe health problems throughout this litigation, including cancer that required travel to Mexico twice for treatment in 2020.[56] He has a number of other chronic conditions and was hospitalized four times in March, April, and May 2021.[57] He

---

[50] *Id.* ¶¶ 50, 53.

[51] *Id.* ¶ 56.

[52] *Id.* ¶ 45; Docket No. 48.

[53] Docket No. 58-1 ¶¶ 50, 53.

[54] Docket No. 48.

[55] Docket No. 58-1 ¶ 57; Docket No. 58.

[56] Docket No. 58-1 ¶¶ 31–32.

[57] *Id.* ¶ 34.

suffered a retinal hemorrhage that nearly blinded him and went to Mexico for eye surgery in June 2021.[58] He had another eye surgery in October 2021—approximately the same time his former counsel withdrew.[59] In short, Vargas appears to have attempted to participate in this litigation but was unable to do so consistently for reasons at least partially out of his control.

The court warns Defendants that their pattern of inconsistent participation in this lawsuit invites skepticism about their good faith. Defendants have not offered satisfactory explanations for some failures, including Vargas's failure to pay the former attorney, failure to avail himself of the court's offer to consider appointing an attorney, and failure to respond to Plaintiff's counsel's emails requesting collaboration on the stipulated pretrial order. For now, however, the court will credit Vargas's explanation of his difficult situation and accept the possibility that these failures were due to ineptitude rather than purposeful defiance.

As for the potential merit of the defense, to satisfy this element a defendant's averments need only plausibly suggest facts which would constitute a cognizable defense.[60] Among other claims, Plaintiff sued Defendants for breach of contract for failing to pay him an agreed-upon wage. Defendants dispute the terms of the agreement. If resolved in Defendants' favor, the facts would defend against the breach of contract claim. This is all that is required to show a potentially meritorious defense. Plaintiff has colorable arguments against some defenses, but this is not the time to litigate such issues.[61] The court is not well poised to declare defenses meritless on the undeveloped state of the record here.

---

[58] *Id.* ¶¶ 35–36.

[59] *Id.* ¶ 37.

[60] *In re Stone*, 588 F.2d 1316, 1319–20 (10th Cir. 1978); *see also Jetcraft Corp. v. Banpais, S.A. De C.V.*, 166 F.R.D. 483, 486 (D. Kan. 1996).

[61] *See In re Stone*, 588 F.2d at 1319 ("The parties do not litigate the truth of the claimed defense in the motion hearing.").

In sum, factors weighing in favor of granting the motion to set aside the default include an averred lack of willfulness and affirmative efforts to participate, a potentially meritorious defense, and the underlying judicial preference for resolving cases on the merits. The court also considers the six-figure amount of a potential default judgment to weigh in favor of resolving the case on the merits.

On the other hand, the court has very grave concerns about prejudice to the Plaintiff. Plaintiff has already experienced significant delay and incurred additional attorney's fees due to Defendants' behavior, whether willful or not. Plaintiff and his counsel have acted responsibly toward Defendants, even generously. The fact that Defendants have obtained new counsel does not relieve the court's concerns about future prejudice; Defendants participated inconsistently even when represented by prior counsel, who ultimately withdrew due to lack of communication and non-payment of fees. The equities on this point are firmly in Plaintiff's favor.

Balancing all factors, the court will set aside the default but with a strict warning to Defendants that the court will tolerate no further deviation from court rules and orders[62] and expects Defendants to avoid further unnecessary expenses for Plaintiff. A default judgment will result if the court sees any more risk of "interminable delay and continued uncertainty."[63] To encourage efficient resolution of this matter and avoid additional prejudice, the court will refer this case to a magistrate judge for a settlement conference.

---

[62] Plaintiff suggests that Defendants' motion to set aside the default is overlength. Even if it is overlength it is not grossly so (approximately 3,400 words instead of 3,100) and Plaintiff's memorandum is also overlength.

[63] *In re Rains*, 946 F.2d 731, 733 (10th Cir. 1991) (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970)).

### III. CONCLUSION

It is therefore

ORDERED that Defendants' Motion to Set Aside Default (Docket No. 58) is GRANTED. It is further

ORDERED that the Default Judgment (Docket No. 53) is set aside. It is further

ORDERED that Defendants' Motion to Appoint Counsel (Docket No. 48) is DENIED AS MOOT. It is further

ORDERED that the case will be referred to a magistrate judge for a settlement conference by separate order.

DATED this 20th day of January, 2022.

BY THE COURT:

_____
Ted Stewart
United States District Judge